# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

FILED

UNITED STATES OF AMERICA )

v. )

RANDOLPH HURST and )
JUSTIN SILVEIRA )
 )
 )
 )

2012 NOV 29 P 1:04

CR12-162-05

In violation of 18 U.S.C. §§ 2,
1028A, 1341, 2314, 1503, 1623,
1956, and 26 U.S.C. §§
7201, 7206(1)

## INDICTMENT

The grand jury charges that:

### Introduction

At all times material to this Indictment:

1. Defendant, RANDOLPH HURST ("HURST"), was a resident West Warwick, Rhode Island. From on or about April 6, 2009, until on or about November 30, 2011, defendant HURST was employed as an Assistant District Manager for the Social Security Administration ("SSA").

2. Defendant, JUSTIN SILVEIRA, was a resident of Coventry, Rhode Island and defendant RANDOLPH HURST's nephew.

3. An individual known by the initials "L.M." was a resident of the State of Rhode Island.

4. An individual known by the initials "M.M." was a resident of the State of Rhode Island and L.M.'s daughter.

5. Summit Brokerage Services, Inc., ("Summit"), is a Florida based financial services company which provides securities brokerage and investment services to independent financial advisors. An individual known by the initials "S.A." was a resident of the State of

Rhode Island and an independent financial advisor operating a Summit office in Providence, Rhode Island.

6.     First Clearing, LLC, is a clearing firm for Summit and is headquartered in St. Louis, Missouri.

7.     Monex Deposit Company, is a precious metals distributor located in Newport Beach, California.

## COUNTS 1 and 2

### (Mail Fraud - 18 U.S.C. § 1341)

### Scheme and Artifice to Defraud

8.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 7 of this Indictment as though fully set forth herein.

9.     From in or about January of 2010, and continuing until on or about August 31, 2012, in the District of Rhode Island and elsewhere, defendant RANDOLPH HURST knowingly executed and attempted to execute a scheme and artifice to defraud L.M., and for obtaining money and property of L.M., specifically stock certificates L.M. held in the Mexico Fund, Inc. numbered NMX 86913 and NMX 86933, by means of false and fraudulent pretenses, representations, and promises.

### Object of the Scheme and Artifice to Defraud

10.     It was the object of the scheme and artifice to defraud L.M. of the value of stock certificates, specifically stock certificates L.M. held in the Mexico Fund, Inc., numbered NMX 86913 and NMX 86933.

### Manner and Means

11.     It was part of the scheme and artifice to defraud that on or about May 6, 2010,

defendant RANDOLPH HURST conducted customer service inquiries relating to L.M. using the Social Security Administration's electronic database which showed L.M.'s social security number, date of birth, address and familial information.

12.   It was further part of the scheme to defraud that on or about September 27, 2010, Defendant RANDOLPH HURST caused the opening of an account at Summit in the names of defendant HURST and L.M. ("the Joint Account"), with L.M. as the primary account holder.

13.   It was further part of the scheme to defraud that in connection with the opening of the Joint Account defendant RANDOLPH HURST provided S.A. with false information concerning L.M.'s address and phone number.  Namely, defendant HURST provided S.A. with an address of 56 "Reed" Avenue, Coventry, Rhode Island, and phone number 401-***-3666, and represented that the address and phone number were L.M.'s, when defendant HURST knew in fact that the address and phone number were his nephew's, defendant Justin Silveira.

14.   It was further part of the scheme to defraud that in connection with the opening of the Joint Account, defendant RANDOLPH HURST also provided S.A. with L.M.'s social security number.

15.   It was further part of the scheme to defraud that in connection with the opening of the Joint Account, defendant RANDOLPH HURST provided S.A. with two stock certificates L.M. held in the Mexico Fund, Inc., specifically stock certificates numbered NMX 86913 and NMX 86933.

16.   It was further part of the scheme to defraud that in connection with the opening of the Joint Account, defendant RANDOLPH HURST provided S.A. with  signatures on the Joint Account openings documents that he represented were L.M.'s when in fact defendant HURST

knew that L.M. had not signed any of the Joint Account opening documents and that the Joint Account was being opened without L.M.'s knowledge.

17.     It was further part of the scheme to defraud that defendant RANDOLPH HURST provided S.A. with a document dated September 25, 2010, purportedly signed by L.M. addressed "to whom it may concern" requesting the deposit of two stock certificates into the Joint Account, when in fact defendant HURST knew that L.M. had not authored any such document.

18.     It was further part of the scheme to defraud that on or about October 6, 2010, defendant RANDOLPH HURST caused S.A. to sell stock certificates numbered NMX 86913 and NMX 86933, without L.M.'s knowledge.

19.     It was further part of the scheme to defraud that on or about October 20, 2010, without L.M.'s knowledge defendant RANDOLPH HURST caused Summit to issue check number 1552140 in the amount of $157,747.49, in the names of L.M. and Randolph Hurst, from the proceeds of the sale of the stock, and for the check to be sent overnight by Federal Express to 56 "Reed" Avenue, Coventry, Rhode Island.

20.     It was further part of the scheme to defraud that on or about October 22, 2010, defendant RANDOLPH HURST caused the deposit of check number 1552140 in the amount of $157,747.49, into his and his wife's joint account #01-****9272, at the Centreville Bank, East Greenwich branch, which check defendant HURST knew contained the forged signature of L.M.

21.     It was further part of the scheme to defraud that, without L.M.'s knowledge, on or about October 22, 2010, defendant RANDOLPH HURST caused Summit to issue check number 8325507 in the amount of $3,980.46, in the names of L.M. and Randolph Hurst, for the remaining proceeds of the sale of the stock, and for the check to be sent to 56 "Reed" Avenue,

Coventry, Rhode Island.

22.     It was further part of the scheme to defraud that on or about on October 30, 2010, defendant RANDOLPH HURST caused the withdrawal of $60,000 from his and his wife's joint account #01-****9272 at Centreville Bank, and the subsequent purchase of a cashier's check in the amount of $60,000 made payable to Monex Deposit Company.

23.     It was further part of the scheme to defraud that on or about November 2, 2010, defendant RANDOLPH HURST caused the mailing of the cashier's check in the amount of $60,000 to Monex Deposit Company, and purchased 20 - 1 oz gold Buffalo coins and 20 - 1 oz gold American Eagle coins from Monex Deposit Company.

24.     It was further part of the scheme to defraud that on or about November 8, 2010, without L.M.'s knowledge, defendant RANDOLPH HURST caused the deposit of check number 8325507 in the amount of $3,980.46, into his and his wife's joint account #01-****9272, at the Centreville Bank, East Greenwich branch, which check defendant HURST knew contained the forged signature of L.M.

25.     It was further part of the scheme to defraud that from on or about October 22, 2010, and continuing thereafter, defendant HURST and his wife spent the $161,727.95 in proceeds from the stock sale on personal items and expenses.

**Execution of the Scheme**

26.     On or about the dates listed below, in the District of Rhode Island, and elsewhere, for the purpose of executing the scheme and artifice to defraud described in paragraphs 1 through 25, defendant RANDOLPH HURST did knowingly cause to be placed in an authorized depository for mail, the following checks made payable to L.M. and Randolph Hurst, in the

5

amounts stated in each Count below, which items were to be delivered by common carrier and the United States Postal Service:

| Count | Date | Check No. | Amount |
|-------|------|-----------|--------|
| 1 | 10/21/2010 | 1552140 | $157,747.49 |
| 2 | 10/22/2010 | 8325507 | $3,980.46 |

All in violation of Title 18, United States Code Sections 1341 and 2.

## COUNT 3

(Transportation of Stolen Securities - 18 U.S.C. § 2314)

27.     The grand jury realleges and incorporates by reference paragraphs 1 through 25 of this Indictment as though fully set forth herein.

28.     On or about the September 27, 2010, in the District of Rhode Island and elsewhere, the defendant, RANDOLPH HURST did unlawfully transport, transmit, and transfer in interstate and foreign commerce from Rhode Island to Florida, stolen securities, that is, Mexico Fund Inc. stock certificates numbered NMX 86913 and NMX 86933, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Sections 2314 and 2.

## COUNT 4

(Money Laundering – 18 U.S.C. § 1956(a)(1)(B)(i))

29.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 26 of this Indictment as though fully set forth herein.

30.     On or about October 30, 2010, in District of Rhode Island, the Central District of

California, and elsewhere, the defendant, RANDOLPH HURST, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is mail fraud, in violation of 18 U.S.C. § 1341, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Date | Transaction | Amount | Payee |
|------|-------------|--------|-------|
| October 30, 2010 | Check #025069 | $60,000 | Monex Deposit Company |

All in violation of 18 U.S.C. Sections 1956(a)(1)(B)(i) and 2.

## COUNT 5

### (False Tax Return – 26 U.S.C. § 7206(1))

31.     On or about November 29, 2006, defendant RANDOLPH HURST purchased a home located at 18A Grant Street, Marlborough, Massachusetts.  At the time defendant HURST purchased the property, there were two apartments in the building with tenants occupying each residence.

32.     On or about November 29, 2006, in connection with his purchase of 18A Grant Street, defendant RANDOLPH HURST received a cashier's check in the amount of $15,443.65.

33.     That on or about February 11, 2007,  in the District of Rhode Island, defendant RANDOLPH HURST, did willfully make and subscribe a joint U.S. Individual Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which defendant HURST did not believe to be true and correct as to every material

matter. That joint U.S. Individual Tax Return, Form 1040, which was filed with the Director, Internal Revenue Service Center, on behalf of defendant HURST and his spouse, stated that their joint total income for the calendar year was the sum $130,292, whereas, as he then and there knew the joint Return did not include the approximately $15,443.65 in income defendant HURST received in connection with his purchase of 18A Grant Street.

All in violation of Title 26, United States Code, Section 7206(1).


## COUNT 6

### (False Tax Return – 26 U.S.C. § 7206(1))

34.    The Grand Jury realleges and incorporates by reference paragraphs 1 and 31 of this Indictment as though fully set forth herein.

35.    From on or about January 1, 2007, through on or about December 31, 2007, Defendant RANDOLPH HURST received approximately $21,472 in rental income from tenants occupying 18A Grant Street, Marlborough, Massachusetts.

36.    That on or about March 19, 2008, in the District of Rhode Island, defendant RANDOLPH HURST, did willfully make and subscribe a joint U.S. Individual Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which defendant HURST did not believe to be true and correct as to every material matter. That joint U.S. Individual Tax Return, Form 1040, which was filed with the Director, Internal Revenue Service Center, on behalf of defendant HURST and his spouse, stated that their joint total income for the calendar year was the sum $130,693, whereas, as he then and there knew the joint Return did not include the approximately $21,472 in income defendant HURST received in rental payments relating to 18A Grant Street.

8

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 7

(False Tax Return – 26 U.S.C. § 7206(1))

37.     The Grand Jury realleges and incorporates by reference paragraphs 1 and 31 of this Indictment as though fully set forth herein.

38.     From on or about January 1, 2008, through in or about December 31, 2008, defendant RANDOLPH HURST received approximately $18,650 in rental income from tenants occupying 18A Grant Street, Marlborough, Massachusetts.

39.     That on or about March 23, 2009, in the District of Rhode Island, defendant RANDOLPH HURST, did willfully make and subscribe a joint U.S. Individual Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which defendant HURST did not believe to be true and correct as to every material matter. That joint U.S. Individual Tax Return, Form 1040, which was filed with the Director, Internal Revenue Service Center, on behalf of defendant HURST and his spouse, stated that their joint total income for the calendar year was the sum $135,732, whereas, as he then and there knew the joint Return did not include the approximately $16,650 in income defendant HURST received in rental payments relating to 18A Grant Street.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 8

(Tax Evasion – 26 U.S.C. § 7201)

40.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 39

of this Indictment as though fully set forth herein.

41.     On or about October 27, 2010, defendant RANDOLPH HURST received approximately $253,603 in debt cancellation in connection with the sale of 18A Grant Street, Marlborough, Massachusetts.

42.     On or about March 31, 2011, in the District of Rhode Island, defendant RANDHOLPH HURST, a resident of West Warwick, Rhode Island, who during the calendar year 2010 was married, did willfully attempt to evade and defeat a part of the income tax due and owing by him and his spouse to the United States of America for the calendar year 2010, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Tax Return, Form 1040, on behalf of himself and his spouse, which was filed with the Internal Revenue Service. In that return, it was stated that their joint taxable income for the calendar year was the sum of $146,231, and that the amount of tax due and owing thereon was the sum of $0. In fact, as he then and there knew, their taxable income for the calendar year was in excess of the amount stated on the return, and upon the additional taxable income, namely the approximately $161,727.95 in income received from the sale of L.M.'s stocks and approximately $253,603 in debt cancellation he received in connection with the sale of 18A Grant Street, Marlborough, Massachusetts, substantial additional tax was due and owing to the United States of America.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 9

(Aggravated Identity Theft – 18 U.S.C. § 1028A)

43.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 26

of this Indictment as though fully set forth herein.

44.     On or about September 27, 2010, in the District of Rhode Island, the defendant, RANDOLPH HURST, did knowingly transfer, possess and use, and willfully caused, the transfer, possession and use, without lawful authority, a means of identification of another person, that is the full name and social security number of L.M., which defendant HURST knew belonged to a real person, during and in relation to felony mail fraud, 18 U.S.C. § 1341.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT 10

### (Perjury -18 U.S.C. § 1623(a))

45.     On or about April 4, 2012, in the District of Rhode Island, a grand jury of the United States was conducting an investigation to determine whether there had been committed in the District of Rhode Island violations of federal mail fraud laws and related matters.  It was material to the grand jury investigation to determine how and why, defendant Randolph Hurst came into possession of two stock certificates L.M. held in The Mexico Fund, Inc., specifically stock certificates numbered NMX 86913 and NMX 86933.

46.     On or about April 4, 2012, defendant JUSTIN SILVEIRA, appeared as a witness before the aforesaid grand jury of the United States and, while under oath, knowingly made false material declarations in response to questions with respect to the material matter as alleged above:

Q.  So what do you recall her saying about the stocks?

A.  To see if he would be interested in trading, if my uncle would.

Q.  And what did she say about where she was going to get the stocks?  Whose stock were they?

A.  Her father's.

11

Q.  What did she say?  Could you just tell the grand jury what you recall her saying?

A.  <u>She said to ask your uncle if he would be interested in doing an exchange, stocks for</u> <u>– I don't know if she mentioned that he didn't -- obviously, he would know how to sell them but I</u> <u>think she said he didn't know how to get rid of them or something to my knowledge.  But she</u> <u>said to just bring it up to my uncle, if he would exchange and how many did he have.</u>

Q.  So she proposed exchanging her father's stock certificates for the gold that you had told her your uncle wanted to sell?

A.  <u>Correct.</u>

47.     The underscored testimony of defendant JUSTIN SILVEIRA, as he then and there well knew and believed, was false in that defendant SILVEIRA knew that defendant Randolph Hurst did not come into possession of two stock certificates L.M. held in the Mexico Fund, Inc., specifically stock certificates numbered NMX 86913 and NMX 86933, as a result of M.M. proposing to exchange her father's stock certificates for gold.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 11

### (Perjury – 18 U.S.C. § 1623(a))

48.     On or about April 4, 2012, in the District of Rhode Island, a grand jury of the United States was conducting an investigation to determine whether there had been committed in the District of Rhode Island violations of federal mail fraud laws and related matters.  It was material to the grand jury investigation to determine whether defendant Randolph Hurst, on or about October 22, 2010, caused the deposit of check number 1552140 in the amount of $157,747.49, into his and his wife's joint account #01-****9272, at the Centreville Bank East Greenwich branch, with defendant Randolph Hurst's knowledge that the check contained L.M.'s forged signature.

49.     On or about April 4, 2012, defendant JUSTIN SILVEIRA, appeared as a witness

before the aforesaid grand jury of the United States and, while under oath, knowingly made false

material declarations in response to questions with respect to the material matter as alleged

above:

Q.   How did the cash check -- how did the check get delivered to either your uncle or you or Ms. Mirto, the check from the sale of the stock?

A.   It came -- I believe it came to my mother's house.  Mr. Mirto had to sign it and then it had to go to my uncle and then get deposited into the bank, into the joint account I guess.

Q.   Did Ms. Mirto ever sign her father's name in your presence?

A.   **No.  It took a couple of weeks every time, or a couple of days she'd come back or something.  It was never on the spot, oh, let me run in the back and sign something real quick.  I've never seen it with my eyes.**

Q.   Did you give her -- how much was the check for the sale of the stock?

A.   I don't know.  It was in an envelope.  I never knew the exact amount.  He did the math where how many coins were needed.  I never did the exact amount.  All I knew is every one that was going to get sold, I'd get $50 for it.

Q.   I'm showing you what's been marked as Grand Jury Exhibit No. 7.  Can you see that on the screen?

A.   Is that an 8 or a 5?

Q.   Here, I'll hand it to you.  Have you ever seen Grand Jury Exhibit No. 7 before?

A.   Personally, no.

Q.   Do you know what it is?

A.   Yeah.  It looks like a check.

Q.   A check for what?

A.   The price?  That's what you're asking?

Q.   No.  A check for -- what's the amount of the check?

A.   $157,747.49.

Q.   And what is that -- what is that check for, not the amount but what caused it to be issued?

A.   A trade.

Q.   Of what?

A.   Gold coins for stock.

Q.   What do you mean gold coins for stock?

A.   That's what they were trading, gold coins for stock.

Q.   But that check is for the sale of the stock, correct?

A.   Yes.

Q.   And whose name is the check issued in?

A.   [L.M.] and Mr. Hurst.

Q.   What's the address on the check?

A.   56 Read.  Yeah, that's another thing that came in; "What do I do with this?"  "Bring it to her, have him sign it, I'll sign it, let him know this was getting deposited."

Q.   And how quickly was that check deposited by your uncle?

A.   I don't know if he did it the next day or -- I don't know when he did it.  I know it took a – I knew it took a little while because she kept calling me asking what the situation was with it, and I don't know if he was waiting for it to clear or the other coins.  I don't recall.

Q.   But it didn't take her two weeks to get back to you with her father's signature on that check?

A.   How long did it take her to get back to me?

Q.   Yes.

A.   **A few days.  The whole time my phone was ringing.  Like I said, I was doing a lot of stuff, like selling stuff.  I wouldn't answer every time she called.**

Q.   And after she got back to you with her father's signature on the check, you gave it to your uncle, correct?

A.   **Correct.**

14

50.     The underscored testimony of defendant JUSTIN SILVEIRA, as he then and there well knew and believed, was false in that defendant SILVEIRA knew that he did not give check number 1552140  in the amount of $157,747.49 to M.M. for her to obtain her father's signature prior to giving it to defendant Hurst.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 12

### (Obstruction of Justice – 18 U.S.C. §1503(a))

51.     On or about April 4, 2012, in the District of Rhode Island, defendant JUSTIN

SILVEIRA, did corruptly endeavor to impede the due administration of justice in a federal grand

jury investigation in the District of Rhode Island by providing false and misleading statements to

a federal grand jury concerning the investigation of defendant Randolph Hurst's involvement in

the sale of L.M.'s Mexico Fund, Inc., stock certificates, specifically stock certificates numbers

NMX 86913 and NMX 86933.

All in violation of Title 18, United States Code, Section 1503(a).

A TRUE BILL:

**REDACTED**

PETER F. NERONHA
UNITED STATES ATTORNEY

ADI GOLDSTEIN
Assistant U. S. Attorney
Deputy Criminal Chief

DULCE DONOVAN
Assistant U.S. Attorney

DATED: November 29, 2012

16